Good morning Your Honours. My name is Don Darnell from Michigan. With me today is Joseph Carey, our co-counsel in this case. I represent a company, it's a Canadian company, 679637 Ontario Ltd, and this company also has many affiliates in the United States. This case is about truck tarps, flexible truck tarps that are laminated with a product produced by Marabu. At issue in this case is whether the Plaintiff Ontario gave notice to the defendant within a reasonable time after discovering a defect in the Marabu laminate as required by Section 2607, Subsection 3 of the UCC. We contend that the District Court was in error when it found that, quote, there are no facts in the record to suggest that the plaintiff gave notice to the defendant within a reasonable time after discovering the problem with the banners being soiled. Our precise disagreement with the District Court's opinion is that Ontario was not aware of the defect in 2011, that's the date that the District Court was referring to, and neither could it have been reasonably aware of the defect in 2011, given that there was a single isolated complaint in 2011, which would have been a unique user, and with unique user, there would have been any number of extraneous influences on that tarp, which would have been responsible for a single dirty tarp issue in 2011. Are you saying that there's a reasonable difference of opinion about when the discovery took place? I think that's our case in a nutshell, Your Honor. The defendant and the District Court says that Ontario either knew or should have known in 2011 that the laminate was defective. We say we had one complaint, it was a unique user, we had hundreds of complaints in 2014, all of a sudden, and they did an extensive investigation in 2014, and then they discovered that it was the laminate that was making the truck tarps dirty, and they immediately gave notice to Marabu about 68 days later, after they concluded the initial conclusion of the... How long did the investigation take? It took about two months. The investigation was, one, not so much, I think it was initially not so much geared to who's to blame, but how can we fix the problem? It was a cleaning investigation, they used all kinds of cleaning methods, and they found that they could not clean the tarps because the dirt was literally embedded in the laminate, as if under the laminate. So you say the District Court has got to do some more fact-finding? I think so. I think the District Court relied upon two facts, from what I can see from its opinion. First, we said in the complaint, we said in the complaint that my client knew as early as 2011 that there were dirty tarp issues. That's a fair statement, but we just say my client's customers complained as early as 2011. It's a present tense observation of a historical fact. That was the earliest... You're just saying you didn't know why. That's right. So when the complaint was filed, you can look historically back and say, oh, now we know in 2011 that possibly that 2011 tarp may have been an affected tarp. We don't know for sure. For all we know, that customer was washing his truck tarp with motor oil. We just don't know. But we do know in 2014, when there are hundreds of complaints, now we know what it is. So we say in the complaint... Is the argument that you ought to have known sometime between the first one? How many did it take is the issue, I guess? That's a good question, Your Honor. Because you don't see from the record 2012 complaints or 2013 complaints. What you see from the record is 2014 complaints from Mr. Martel, and you see one complaint from 2011. So, were there interim problems? Not from the record we have before the court. It's just that... Yeah, it just kind of exploded in 2014, and that's when they were actually aware of what the defense... How much money is involved in this case? Approximately $2 million. Because the tarps are not repairable. The tarps have to be... The tarps... I don't know if the courts ever observed these tarps. Of course you probably will when you leave the courthouse today. They're flexible, long truck tarps, and some of them are just black, and some of them are just one color. But most of them are black with a graphic printed on them, and the graphic may or may not... They're usually panelized, four or five panels, depending on how long the trailer is. You can't just re-laminate them. You have to take them off, throw them away, and put them back on. It's a fairly expensive endeavor. I think it's about $12,000 a tarp. The tarps advertise what's in the truck, or can they be used for trucks just to advertise for whomever and make more money? The bigger customers are either... They get their own tarp with their own name. They do. They're usually, I think, called LTLs or something like that. They have smaller loads, or they have dedicated loads. But they're usually not a company. They're usually a trucking company. I see. So the only facts in the record, though, seem to be your statement in your complaint, which the district court sort of took as an admission of 2011 as the right date, and then a statement by Martel, who just asserted that he became aware of complaints by customers when he began working for you in 2014. That seems like kind of a scanty record if your claim is we didn't know until 2014. How is it that just one employee saying, well, I started working for them in 2014, and I knew then, that doesn't tell me much about what happened between 2011 and 2014. I think the district court makes that observation as well. He seems critical of Mr. Martel's testimony in that regard. He says, well, that's just when he started, but that's not really what Mr. Martel says. He says, I started in May, and then we had a lot of complaints, and I investigated it. So really, in addition to the two facts we've already talked about, there's the investigation itself, which is part of the record, which discusses what happened, when it happened in early 2014, and what measures they took to try to investigate, or to investigate, and what conclusion they came to. So the district court doesn't speak of that. It doesn't. I don't know why. This is procedurally, I'm sorry. No, no. Answer Judge Cook's question. I'm sorry. Was it argued to the judge? I mean, usually, when it's argued, it gets into the opinion. Well, we came to this summary judgment. It makes me think it wasn't argued. We came to the summary judgment opinion in a strange way. Marabu argued that because, Marabu argued, obviously, this notice issue in their summary judgment, but they didn't argue it the way the judge decided it. They said, in their brief, that because Marabu had a one-year warranty, and then they would extend that a month, they were looking for a 13-month look back from the date of the notice in September 5th. If you look at their motion, they're just looking for partial summary judgment. They're not looking for full summary judgment. That's the relief they were looking at. The judge did ask me about this unique user in 2011, but that was the record. We were not aware that the judge was interested in using the 2011 complaint as a basis for dismissing the entire case, to come to the conclusion that our client should have given notice in 2011 as of 2014. Marabu didn't argue that. We didn't have a chance to respond to it. What exactly did Marabu argue? They argued 13 months from the date of discovery. What's your date of discovery? Our date of notice is September 5th, 2014. That's the date they were arguing, 13 months look back from that. The statute of limitations in this case, which was part of their summary judgment, which we conceded to, was only 25 months before that date. The court's obligation is to see the facts in the best light to the non-moving party. In this case, the three facts that we have, if you look at them in the best light to the non-moving party, we argue they tend to demonstrate that our client was reasonably prudent about trying to investigate the problem, that it didn't really occur, there's no other facts that said it occurred any earlier than 2014, and that we just had this one isolated incident in 2011. Sadly, that's what went in your response, one, that date, it's not surprising the court glommed on to that, right? Yeah, possibly, yeah, I'm not sure why that became a key date. I think the judge looked at it in the favor of Marabu, it took that one complaint and said, you should have known that, you should have known that, it didn't take into consideration, and I argued, I explained, we had one unique user. You had an oral argument. We did. And is it your contention that there are no complaints between 2011 and September 5th, 2014? De minimis complaints. Well, what does that mean? Because the question is, when should you have known? Some trucks will just get damaged. They operate in harsh environments, they might be in a coal environment, for example, which was very acidic, they might be exposed to abrasion, that is, trees might rub against them or other vehicles or something like that, that wears the laminate away. Some trucks are just going to come back damaged. That's going to happen, and you expect that in this business. What you don't expect is that all of your trucks come back damaged, and that's what happened in 2014. So you're paying, you're reimbursing the other flaws that happened from coal or acid or... No, they wouldn't. That's how you would know, isn't it? They wouldn't. They would possibly make a warranty claim if they had, and it would be investigated to see if it was a problem with the tarp or a problem with the use. It leads me to question, how many warranty claims did you have, just as Judge Lawson heard? Yes. Both Judge Lawson and Judge Larson. Right. What's the answer to that? How many exactly? You would be notified each time, maybe not every time, but each time a customer thought they were, that you owed them money. Is that not in the record? There's no record of a complaint from 2011 to 2014. Okay. The record just wasn't developed. And when you talk to the... Wait, the record wasn't developed or there weren't any? There were de minimis claims, but the record was not developed to talk about 2012-2013 claims for this motion. Why? Yeah, why? Because the judge basically, I think because Judge Lawson argued Marabu's case for them and we didn't have an opportunity to respond or to develop that record farther to talk about those claims in the middle. Judge Lawson just clamped onto that 2011 claim and that's all that was talked about. Counsel, let me ask you one question. If Judge Lawson had recognized that he has a factual issue here as to when, would that have had to be tried by a jury and not disposed of by the court? I believe so, Your Honor. Okay. Looks like I'm out of time. I've reserved three minutes for rebuttal. All right. Thank you. Thank you. Mr. Collier. Good morning and may it please the court, Trent Collier for Marabu. There's a few arguments being made here. One of their arguments is that they didn't know about this problem. The court can set that argument aside because the question is when they should have known. One of the issues that came up during counsel's argument was this question of what was going on between two factual issues. It's not in this case because we have their complaint. I think the plaintiff's argument isn't being very fair to Judge Lawson. There's no factual issues here because of what was pleaded in their complaint. Paragraph 17 of their complaint says they continued to receive complaints from customers, in the plural, beginning in 2011 and continuing through 2014 and into 2015. So looking at the complaint, what was pleaded, the question of law for the court was when should they have known? Under Michigan law, if a party has them meet... Why is it a question of law necessarily? It looks like, to me, when should they have known is a question of fact. It's a question of law, well it can be a question of fact, but in this case, given what they pleaded, there are no factual questions here. You can take what they pleaded and apply it to Michigan law, and the question is, under law, is... They didn't plead that they should have known in 2011, did they? They didn't plead that. They pleaded that they began to receive complaints from customers in 2011. What's critical here is that... They continued to receive them through 2014. At least that's what you're saying. I don't have the complaint in front of me. Right, and that's paragraph 17 and paragraph 13 of their complaint. What's critical here are that there's a four-year statute of limitations, which means before this period began, they were receiving complaints from their customers. What Michigan law holds, and this is the Bev Smith Inc. case, is that if a plaintiff has the means to find out what the problem is, they have a duty to find out what that problem is. If they should have known, if they knew there was a problem and they had the means to find out what that problem was, then they should have known at that time. Question of what? Because if you take what they've pleaded, they had these complaints, they had the means to find out what the problem was. They don't claim that they needed anything from my client. They had the means to figure out what the problem was, and instead of trying to figure out what was going on, they continued to order the same product again and again and again for a period of four years. But don't they say they didn't know what the problem was? They do say that. Why isn't that a fact? Because of the Bev Smith Inc. case, which holds that if they have the means to find out what the problem is, and they knew there was a problem, they just didn't, they're saying, well, we know there was a problem, we know our customers aren't happy, but we're just going to keep buying the same product and not investigate to find out what's going on. They waited to find out. They waited to find out. And the law says thou shalt, within that four years that you know, you must do what you can to investigate what the problem is or you're foreclosed. Right, right. I think that Bev Smith's case is helpful here. That's a case where you have this plaintiff who bought this race car, and he was told that it belonged to this famous race car driver. And it turned out, after three years, he found out that they had replaced the body and replaced the tires, so there wasn't much there that actually belonged to this party. And so three years after the fact, this plaintiff said, well, this isn't the car that I thought I was buying. And the court said, but you had the means the whole time to find out what the problem was, and you didn't use it. And that's exactly what we have here. I thought the facts showed that they were continuing to try to find out what the problem was. That's, no. What they pleaded in their complaint and what they told the court is that they didn't bother to even look into this until 2014. And if the court looks at the report that they produced of their Where is it in the record that they say they didn't bother to look into it anymore until 2014? I beg your pardon, I didn't hear the whole question. I say, where is it in the record that you're quoting in which they say they didn't bother to look into it anymore until 2014? Well, I think it's in their complaint. I think it's all over the record. And I think Mr. Darnell told the court this morning Quote me one or two places where you say it's all over the record. Mr. Darnell told the court this morning that they didn't investigate until 2014. I don't think there's a question about that. That's when they started to look into this problem. And the fact, there's a, here I'll direct the court to it. There's a report. The only report that they've produced of the investigation is the panel cleaning report. It's document 60-1 beginning on page ID 938. That, according to them, is the only time they looked into this problem. And interestingly, that report doesn't actually look into the cause of the problem. It only looks into how to clean the tarps. They didn't actually look into what the root problem was. So they sat on their rights the whole time, ordering the same product and allowing damages to go up and up and up. And they are not allowed to do that under Michigan law. Another reason we're not being quite fair to Judge Lawson is that at the oral argument on our summary judgment motion, when Judge Lawson was asking the plaintiff about the root cause of their problem and when they found out, the plaintiffs were explaining, well, we didn't know until these trucks went out and they used these tarps in the road and we saw how the dirt stuck to these tarps. Judge Lawson said, so what you're saying is that you couldn't figure out whether it was dirt or whether it was the laminate. And they said yes. And they said, we thought there might be some sort of super dirt, I think was the phrase that they used, that they couldn't clean. And what happened then is critical. Judge Lawson said, so you're saying you couldn't tell then whether it wasn't fit for its particular purpose or whether it just wasn't merchantable. And the plaintiff's counsel said, exactly. At that point, there's no questions of fact here. No reasonable fact finder could conclude under these facts that they gave notice within a reasonable time after they should have known about this problem. The argument was made this morning that Judge Lawson construed the record in the light most favorable to my client. That's not accurate here because what Judge Lawson did is he took all the allegations in the plaintiff's complaint and said, assuming those are true, do they have a valid claim here? You don't get more favorable to the plaintiff than taking everything in their complaint as accurate. So for those reasons, there are no questions of fact. I do think our brief addressed this question of assuming that they didn't provide notice within a reasonable time, what's the right outcome? And we talked about the Johnson Controls case. That case concluded that a party in the plaintiff's position could get damages incurred after they provided notice. I think it's critical to note what was different in that case. In that case, you had a different state law that said each installment of this installment contract has to be treated separately. We don't have that state law here. So that's why the court in that case said we can't have one tender that applies for the whole claim. We have to have each separate tender because of this other state law. And here, when you look at the plain text of Section 2607, it says where there is a tender, a party has to provide notice within a reasonable time. There was a tender of this product in 2011. They continued to get complaints, and they didn't raise it until 2014. So is it your argument that if we saw these as separate contracts, they would win and you would lose? No, no. I just want to be – no. Because I thought that if we – your argument was if we see these as separate contracts, that doesn't really do much one way or the other because if – all that matters is when they knew or should have known. Because if you know or should have known and you keep ordering the defective product over and over and over, that's not okay either. Right. And Johnson Controls, I thought, was distinguishable because it's not a product. It's not a case about a product. It's a case about pricing. Charges, right, right. So yes, it is our view in this case that there are – At least that was your argument. I just want to make sure I'm stating your argument correctly. Right. Our view is that because 2607 says failure to provide notice within a reasonable time after they should have known bars them from any remedy, then that would preclude their claim in full here. Unless the court has any additional questions, I'll yield the rest of my time. Thank you. Thank you. I'd like to start with responding to counsel's remarks about the complaints and point out that the complaint doesn't address a known defect in 2011. It discusses a complaint. It discusses a symptom. We had an observable symptom, one, in 2011. Right, but the Michigan case, I forget the name of it, Bev Smith, suggests that if you have the tools to figure out, then it's on you. So it's like, I mean, I don't know. If I had some sort of, I don't know, symptom with my body and I failed to go to the doctor and figure out what was going on, then I can't complain when, you know, it turns out things don't go well for me. Well, if you were a manufacturer of several hundred or thousand devices, let's say an automobile, and you had a complaint from one customer, maybe ten customers, if you're General Motors, that a brake failed. Right. And you don't automatically, you know, you take those warranty claims, you don't automatically assume that it's a defective product. You're probably first going to assume that it's misused or it's an environmental problem, something of that nature, and you're just going to pay for it. Is there a duty in that case, which is very analogous to my client, for General Motors to investigate ten brake failures five years ago? It's the exact same thing. We've got one failure is incumbent upon my client. The complaint didn't say singular, did it? We're told it didn't. It doesn't. It said customers plural. You know, it's unfortunate that when I wrote it, I was using my present sense knowledge of we've got a lot of complaints now and we know of complaints that are similar all the way back to 2011. We know of one. It was really just a range. It's a range, but what it is is kind of distinct from a one-off, and that is what we've kind of been arguing here, that there was a one-off. The idea is how many does it take? You know, the argument is that we thought that you must have told Judge Lawson we thought it was super dirt, but that's the beginning of an investigation, isn't it? And that happened in 2011. So that's where I think Judge Lawson is doing his job, to look at that complaint and say, my goodness, you know, I don't see anything else here. I take you at your word, multiple, 11, here we are. So, yes, it got acute, very acute later, but the law says thou shalt investigate, and that's what we're faced with. That's what it says. That's what the Bev Smith case says. But the Bev Smith case is one race car. It's one old race car. It's easy to investigate if that car is what it's supposed to be. This is one truck tarp out of hundreds for 2011. It's a much different scenario, and Judge Lawson is required to see things in our best light. But your opponent says, yeah, but he read your complaint and he took every allocation in your complaint as true. That's pretty good light. Even if maybe you wish to. I think he misinterpreted it. I think he misinterpreted it and didn't consider the other facts that we presented, that one, the. . . In the complaint. No, in the other evidence, the other evidence that was presented to the motion. In support of the motion. Right. And so what is that other evidence? It's anybody put in an affidavit, for example, saying we got no complaints between, we got this one in 2011, we got no complaints until we got a whole bunch in 2014. Or three or four. Or three or four, or whatever. Jim Martell says in his affidavit. . . Yeah, but you heard the weakness, that the judge is right to take that as weak in light of all those years. And we've got Jim who said, you know, in 2014. When I started working here in 2014, we started getting complaints. He says soon after he started, we started receiving several complaints about the tarps. That's his affidavit. Right, but why don't you put in somebody who works there at the company who could testify as to something between 2011 and 2014? Because it wasn't a problem. Right, but shouldn't you establish that it wasn't a problem? Like somebody who worked there should put in some evidence that it wasn't a problem? We couldn't have known. I guess you could have said it in the negative, but we said it in the positive. The complaints, we described the facts as they happened, not what didn't happen. But if you've got one in 2011 and then you've got this in 2014, the relevant question is what happened in the interim? How did you actually find out? I mean, you didn't find out in 2011. When you did find out, what caused you to be able to find out then? Trying to clean it is what, trying to clean the tarps that were uncleanable is what caused them to find out. You found that there was a chemical base that was preventing the cleaning properly. Is that right? They found that the laminate expanded and trapped the dirt under itself. And you found that out by going to an expert or what? Yes. Looks like I'm out of time. Any more questions, Your Honors? Thank you for your consideration. Thank you. Thank you both for your arguments. Interesting case. So that appears to end the day for us. Alrighty.